**HOUSTON PIPE LINE COMPANY, as Successor in Interest to Houston Natural Gas Corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. H–92–2822.**

United States District Court,
S.D. Texas,
Houston Division.

Aug. 31, 1993.

J. Clifford Gunter, III, Bracewell & Patterson, Houston, TX, for plaintiff.

Andrew L. Sobotka, Dept. of Justice, Tax Div., Dallas, TX, for defendant.

## SUMMARY JUDGMENT ORDER

HOYT, District Judge.

Pending before the Court is the government's motion for summary judgment (in-

strument § 12). Having considered the motion, the response thereto, the replies and the applicable law, this Court concludes that the government's motion shall be granted.

## BACKGROUND

Houston Pipe Line Company is the successor in interest to Houston Natural Gas Corporation ("HNG"). In 1984, HNG was the subject of an attempted hostile takeover by a subsidiary of Coastal Corporation ("Coastal"). HNG determined that the prospects of Coastal being a majority shareholder of HNG threatened HNG's well-being and was detrimental to the interests of its shareholders. HNG's Board of Directors decided to fully and completely repel Coastal's attempt and protect itself against the terms dictated by the offer.

According to the plaintiff, the decision to reject the takeover attempt was a decision primarily influenced by a number of aspects that the Board perceived as negatives. Coastal's offer was a two-tier structure whereby almost 50% of HNG shareholders would receive an unknown, but according to plaintiff, "certainly lesser" value for their HNG stock than would be received by those shareholders receiving $68.00 in cash as part of the first tier of the offer. Furthermore, the Board was concerned about Coastal's unfavorable financial situation and; finally the Board was concerned about Coastal's operating prohibitions in South Central Texas, which is a critical gas market for HNG.

In order to protect its interest, HNG implemented a defense of counter-tender and self-tender offers. HNG also made a bid to buy Coastal. Two weeks following its initial hostile takeover bid, Coastal proposed to withdraw its offer on the condition that HNG purchase Coastal's approximate 5.05% stock interest in HNG for $124.53 million. HNG agreed to these terms and now Houston Pipeline, as successor in interest, seeks to deduct the $124.53 million as an ordinary and necessary business expense under § 162(a) of the Internal Revenue Code.

The government argues that the amount paid by HNG was for stock redemption and should be characterized as a capital expenditure and, therefore, not deductible.

## CONTENTIONS

This case is before the Court on the government's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The issue here is whether the purchase price that was paid to Coastal to prevent its hostile takeover of HNG is deductible under § 162(a) of the Internal Revenue Code. The government assumes as true the facts as alleged by the plaintiff but argues that the plaintiff has no legal basis for its claimed deduction for amounts paid to redeem its stock from a corporate raider. According to the government, only one case has ever permitted a corporation to take a claimed deduction for the purchase amount paid for a stock redemption. However, the government argues that the case, *Five Star Manufacturing Co. v. Commissioner*, 355 F.2d 724 (5th Cir. 1966), is no longer good law and cannot be utilized by the plaintiff for the legal basis of its claimed deduction.

The government contends that *Five Star* was decided under the old "primary purpose" rule that has been repudiated by the "origin of the claim" test announced by the Supreme Court in several cases decided since *Five Star*. The government asks that this Court decide that *Five Star* is no longer good law and grant the government's motion for summary judgment.

The government contends that money spent to redeem corporate stock must be capitalized because if the origin of an expenditure is capital in nature, the expenditure is not deductible as an ordinary business expense, irrespective of whether the taxpayer had a business motivation for making the expenditure. The government argues that under the origin of the claim test, the plaintiff's expense would be characterized as a capital expenditure, and is therefore nondeductible.

In the alternative the government asks that this Court limit *Five Star* to its facts since the primary purpose rule has been rejected, and deny the plaintiff its claimed deduction.

The plaintiff relies on *Five Star* to support the proposition that stock redemption costs incurred in the face of an outside threat to

the survival of a corporation are deductible as ordinary and necessary business expenses. The plaintiff contends that the payment was an ordinary and necessary business expense to prevent the attempted hostile takeover by Coastal. The plaintiff argues that in order to ensure the continued existence of the corporation, it was necessary to repurchase the stock held by Coastal and that because of the factual circumstances surrounding the takeover, it is entitled to deduct the purchase amount. The plaintiff contends that under *Five Star* when a corporation is faced with "dire and threatening" circumstances and/or corporate survival, necessitating the repurchase of its own stock, the purchase amount is a deductible expense.

According to the plaintiff, *Five Star* is still "good law" in this circuit and the Court must be guided by its holding. Finally, the plaintiff contends that the decision in *Five Star* is harmonious with the "origin of the claim" test and, thus, the Court must deny the government's motion so that a factfinder may determine whether the facts of this case fit within the exception carved out in *Five Star*.

## DISCUSSION

A motion for summary judgment will be granted if after reviewing the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, the Court concludes that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Impossible Electronics Technics, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026 (5th Cir.1982). After viewing the evidence in a light most favorable to the nonmovant, summary judgment is appropriate if the Court concludes that a reasonable factfinder could not return a verdict for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

 In general, the purchase price of a stock redemption by a corporation is a nondeductible capital expenditure unless the taxpayer can show that it fits within an exception. *See Markham & Brown, Inc. v. United States*, 648 F.2d 1043 (5th Cir.1981). This Court is of the opinion that the government's motion for summary judgment should be granted because the facts before the Court are insufficient to bring the plaintiff within the exception described in *Five Star*. Thus, the viability of *Five Star* need not be addressed in this case.

In *Five Star*, the court addressed the deductibility of the amount paid by a corporation to terminate the interest of a 50% shareholder. Five Star was owned by two 50% shareholders. Together they held an exclusive licensing agreement that granted both the right to manufacture, use and sell certain automobile heaters in the United States. That right was transferred to Five Star. As a result of a subsequent lawsuit, the licensor refused to renew the licensing agreement with the corporation so long as one of the two shareholders remained a 50% owner of Five Star. Therefore, one of the shareholders purchased his co-owner's shares on behalf of the corporation and entered into a new agreement with the licensor.

The Fifth Circuit permitted the corporation to take an ordinary and necessary business deduction for the cost of repurchasing its shares by reasoning that the corporation's liquidation was inevitable without the removal of the shareholder. Thus, the court concluded that in order to ensure the corporation's very survival and continued existence, it was necessary that the shares be repurchased by the corporation. The court determined that without that repurchase, Five Star could not have renewed the license to manufacture the product that its very existence depended and would, therefore, have been forced to go out of business.

The facts in *Five Star* were such that the very product necessary for the continued ongoing concern would be withheld without the removal of one of the stockholders. That is not the circumstance in the case at bar. HNG's survival as a going concern was not threatened in any manner. Certainly when a corporation is raided, the company may become a different entity, but it continues to survive at the will of the shareholders and management, unlike Five Star which could not have continued to manufacture the very product it was in the business of manufactur-

ing without a renewed licensing agreement. *Five Star* is inapplicable here and, therefore, does not provide HNG a legal basis for its claimed deduction.

Because the Court concludes that no exception exists to the general rule requiring HNG to capitalize the sums paid to redeem its stock, the United States is entitled to summary judgment as a matter of law.

It is so ORDERED.